THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICCARDO GREEN, | CASE NO. C21-1286-JCC |
| Plaintiff, | ORDER |
| v. | |
| SWEDISH HEALTH SERVICES, | |
| Defendant. | |

This matter comes before the Court on Plaintiff's motion to remand this action to state court (Dkt. No. 7). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained below.

I.   BACKGROUND

Green sued his former employer, Swedish Health Services, alleging that Swedish discriminated and retaliated against him in violation of Washington law. (*See generally* Dkt. No. 1-1). Though hard to decipher, Green's allegations seem to fall into four categories:

First, Green alleges that Swedish singled him out for disciplinary investigations and sanction, even though other similarly situated employees—who differed only from Green in that they were white or had not filed EEOC complaints—were not disciplined or investigated. (*See id.* at 5–9, 12–13.) Second, Green seemingly alleges that, compared to other employees, he

received uniquely unenviable work duties and was passed over for promotions. (*See id.* at 10–11.) Third, Green says he was "denied overtime pay and the ability to work overtime," whereas other workers were allowed to work overtime. (*See id.* at 11–12.) Fourth, Green says Swedish wrongfully terminated him for violating the "10-minute rule," and that this rule was unevenly applied to him compared to other, similarly situated white employees. (*See id.* at 14, 21–23.)[1]

According to Mr. Green, all of Swedish's alleged mistreatment, culminating in his termination, was because of his race or in retaliation for EEOC complaints he had filed. (*See, e.g., id.* at 15–17.) The rest of his complaint consists of legal conclusions or problems he identifies with statements by Swedish personnel in a prior administrative proceeding. (*See, e.g., id.* at 26–31.)

Green asserts claims under[2] Washington's Educational Employment Relations Act, an anti-age discrimination statute (Wash. Rev. Code. § 49.44.090), the state whistleblower statute (Wash. Rev. Code. § 51.48.025), the Washington Industrial Safety and Health Act, and the Washington Law Against Discrimination ("WLAD"); he prays for, among other things, $10 million in damages and an order dissolving Swedish. (Dkt. No. 1-1 at 34–39.)

## II.     DISCUSSION

### A.     Legal Standard

A defendant may remove to federal court a lawsuit that could originally have been brought there. *Grable & Sons Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); 28 U.S.C § 1441(a). The removing party must establish that federal subject matter jurisdiction existed at the time of removal. *Prize Frize, Inc. v. Matrix Inc.,* 167 F.3d 1261, 1265 (9th Cir.

---

[1] It is not clear exactly what the 10-minute rule is, but it seems to have something to do with clocking into or out of one's shift and at what point someone is considered late when reporting for work. (*See, e.g., id.* at 21–23.)

[2] Green's cause-of-action section of his complaint also cites Revised Code of Washington §§ 4.16.040 and 4.56.250, which specify, respectively, those cases subject to a six-year limitations period and the limitations periods for claims seeking noneconomic damages.

1999). "The removal statute is strongly construed against removal jurisdiction." *Id.* The Court must remand a case if it lacked subject matter jurisdiction at the time of removal. 28 U.S.C. § 1447(c).

Outside of diversity-jurisdiction cases, federal jurisdiction generally exists only where the face of a plaintiff's well-pleaded complaint presents a federal question. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). However, under the doctrine of "complete preemption," the Supreme Court recognizes that some statutes have such "extraordinary" preemptive power that a complaint can "properly be removed to the federal courts, even when the plaintiff's complaint does not itself include a federal cause of action." *Foy v. Pratt & Whitney Grp.*, 127 F.3d 229, 232–33 (2d Cir.1997) (citations omitted).

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), is one such statute: It completely preempts state law claims that involve the interpretation and application of a collective bargaining agreement ("CBA"). *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 368–69 (1990).

### B. Federal Question Jurisdiction

Swedish argues that federal question jurisdiction exists because Green's claims require interpreting Swedish's CBA and are thus preempted under § 301 of the LMRA. (Dkt. No. 9 at 3–4.) Section 301 preempts state-law claims "founded directly on rights created by collective bargaining agreements." *Caterpillar Inc.*, 482 U.S. at 394. But where, as here, the state law claims exist independently of the CBA provisions, § 301 preempts the claims only if they rely "substantially" on interpretation of the CBA. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). To decide whether claims rely substantially on interpretation of the CBA, the Court must determine whether the "claim[s] can be resolved by 'looking to' versus interpreting the CBA." *Id.* at 1060 (citation and alterations omitted). When the Court just has to *look at* the CBA, but does not have to interpret it, to resolve the claims, they are not preempted. *Id.* Moreover, "a CBA provision does not trigger preemption when it is only potentially relevant

to the state law claims, without any guarantee that interpretation or direct reliance on the CBA terms will occur." *Humble v. Boeing Co.*, 305 F.3d 1004, 1010 (9th Cir. 2002).

Federal question jurisdiction under § 301 is inappropriate because none of Green's claims substantially rely on interpreting the CBA. To argue otherwise, Swedish quotes Green's allegations that mention the union SEIU and asserts that "whether and to what extent such [complained of] disciplinary actions were warranted requires *referencing* the CBA," which governs all of Swedish's duties as to disciplinary matters. (Dkt. No. 9 at 5) (emphasis added).

As the italics suggest, Swedish's arguments establish at most that Green's claims require taking only a look at the CBA. That his claims involve topics—such as termination, employee discipline, and reporting misconduct—that the CBA happens to cover does not compel the conclusion that his claims "substantially rely" on interpreting it. The main thrust of Green's claims is not that Swedish acted inconsistently with the CBA but rather that Swedish singled out Green for harsh treatment compared to his coworkers.

True, the CBA says that Swedish must follow antidiscrimination laws, refrain from discrimination, and cannot terminate its employees without "just cause." (Dkt. No. 9-1 at 14–15.) But nothing about Green's claims substantially requires interpreting these provisions. *See Pierson v. Nw. Steel & Pipe, Inc.*, 2018 WL 2731930, slip op. at 2 (W.D. Wash. 2018) (holding that a WLAD claim did not require substantially interpreting a CBA where "Plaintiff does not allege that he was terminated in violation of the CBA's disciplinary terms. Rather Plaintiff alleges that 'race was a motivating factor in his termination'—an issue not addressed in the CBA."); *Agustiana v. Overhill Farms, Inc.*, 2009 WL 3122866, slip op. at 4 (C.D. Cal. 2009) ("Simply put, Plaintiffs do not seek to enforce the terms of the CBA; rather, they seek to enforce state laws regarding the payment of wages to non-exempt workers.").[3]

---

[3] Green alleges that reasons provided for his termination violated were contradictory, "bogus & defamatory," and violated the CBA. (Dkt. No. 1-1 at 23–24.) But the vague, conclusory nature of this assertion prevents the Court from evaluating whether (if at all) his wrongful termination claim meaningfully differs from his discrimination and retaliation claims and, if so, how much

Swedish also argues that Green's allegations regarding the implied duty of good faith and fair dealing, and an "implied contract between the employee & employer relationship," mean that he cannot support his claims "without interpreting or relying upon the CBA." (Dkt. No. 9 at 6 (citing Dkt. No. 1-1 at 25).) Green, however, does not appear to be asserting any breach-of-contract claims or good-faith-and-fair-dealing claims. (*See generally* Dkt. No. 1.) His complaint's passing reference to those concepts—couched entirely as a legal conclusion without further elaboration—is not sufficient to confer federal question jurisdiction. *See Polkey v. Waste Mgmt. of Wash., Inc.*, 2009 WL 1936257, slip op. at 3 (W.D. Wash. 2009) ("[V]ague, ambiguous, or passing references to federal law in a complaint are not sufficient to support removal based on federal question jurisdiction.").

Defendant's argument that Green is asserting a claim under the Fair Labor Standards Act ("FLSA"), (Dkt. No. 9 at 7–8), is also unpersuasive. Green asserts that it violated FLSA for employees to earn extra income from gambling on Swedish's premises. (Dkt. No. 1-1 at 12–13.) He does not appear to be alleging that Swedish failed to pay him time-and-a-half for extra hours he actually worked; rather, he asserts that he *wanted* to work more hours, but Swedish refused to let him while allowing his coworkers to do so. (*See id.* at 11–12.) There is thus no FLSA claim that would support federal question jurisdiction. *See Polkey*, 2009 WL 1936257, slip op. at 3.

Because the Court finds no basis for federal question jurisdiction, Swedish's argument about supplemental jurisdiction over state law claims (Dkt. No. 9 at 8–9) is moot.

### III. CONCLUSION

For the foregoing reasons, Green's motion to remand to state court (Dkt. No. 7) is hereby GRANTED. As provided in Local Civil Rule 3(i), remand will be effective within 14 days of this order. Each party will bear their own fees and costs.

---

they implicate the CBA. The Court resolves this ambiguity in favor of remand. *See Polkey v. Waste Mgmt. of Wash., Inc.*, 2009 WL 1936257, slip op. at 3 (W.D. Wash. 2009) (resolving ambiguity in plaintiff's favor on a motion to remand following removal based on § 301).

1 | DATED this 16th day of December 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE